UNITED STATES of America, plaintiff,

v.

ONE 1988 CHECOLET 410 TURBO PROP AIRCRAFT, DOMINICAN REPUBLIC REGISTRATION TAIL NUMBER H1698CT, defendant.

No. 03–60100–CIV.

United States District Court, S.D. Florida.

Sept. 2, 2003.

William H. Beckerleg, Jr., AUSA, United States Attorney's Office, Fort Lauderdale, FL, for Plaintiff.

William Joseph Brown, Miami, FL, for Claimant.

### MEMORANDUM AND ORDER

HURLEY, District Judge.

Plaintiff, United States of America, moves for summary judgment on its civil forfeiture claim under 21 U.S.C. § 881(a)(4) over the defendant aircraft. The claimant and owner of the defendant aircraft, CaribAir, Inc., concedes that the defendant property is subject to forfeiture,[1] but opposes the forfeiture on ground it is an innocent owner.

The undisputed facts regarding the use of the aircraft are as follows: On August 7, 2002, two pilots employed by CaribAir, Rafael De La Cruz–Jimenez ("De La Cruz") and Louis Alejandro Madera–Sanchez ("Madera–Sanchez"), used the aircraft to smuggle 455 kilograms of cocaine from the Dominican Republic into Florida through the Fort Lauderdale airport. At the time of the incident, CaribAir contends that it leased the airplane to De La Cruz[2],

---

**1.** Under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) the government has the initial burden of showing, by a preponderance of the evidence, that the defendant property is forfeitable. 18 U.S.C. § 983(c)(1). In a facilitation case, the government must show, by a preponderance of the evidence, that there was a "substantial connection" between the property and the offense in order to establish its forfeitability. 18 U.S.C. 983(c)(3). Based on the criminal convictions of the pilots involved in the drug smuggling incident, the government contends, and the claimant concedes, that this burden is met in this case.

**2.** CaribAir, defending its innocent ownership position, suggests that the "better understanding of the facts is that, though the two pilots were frequently employed by Caribair, de la Cruz Jimenez, on the particular occasion in

but the ostensible business purpose of the flight was to obtain avionics repairs for the aircraft from Peninsula Avionics in Miami, Florida. CaribAir applied for and obtained the requisite FAA waiver which allowed the pilots to operate this private flight into the United States on the evening in question.

The pilots were indicted and found guilty of drug trafficking in *United States v. Rafael Daniel De La Cruz–Jiminez & Luis Alejandro Madera–Sanchez*, Case No. 02–60176–Dimitruleas. De La Cruz pled guilty on November 14, 2002, and Madera–Sanchez was convicted by a jury on November 25, 2002. De La Cruz was a witness against Madera–Sanchez at his criminal trial, testifying that the CaribAir aircraft was used to transport 455 kilograms of cocaine, hidden in the aft, from the Dominican Republic into the State of Florida on the date in question.

### Discussion

With the forfeitability of the property conceded, the remaining question raised by the claimant's cross-motion is whether CaribAir has raised sufficient evidence of innocent ownership to justify entry of summary judgment in its favor on this affirmative defense.

### Civil Forfeiture Statutory Scheme

Prior to the enactment of the Civil Asset Forfeiture Act of 2000 ("CAFRA"), an owner of a conveyance contesting the for-

feiture of his property could assert the "innocent owner" affirmative defense as set forth in 21 U.S.C. § 881(a)(4)(c), which stated "[n]o conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent or willful blindness of the owner." An owner of real property, similarly, could assert an "innocent owner" affirmative defense under § 881(a)(7) by showing that the act or omission forming the basis of the forfeiture was committed "without the knowledge or consent of that owner."

With the passage of the Civil Asset Forfeiture Reform Act, the government's initial burden of proof is raised to establish "by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1), and the separate "innocent owner" provisions of § 881(a)(4),(6) and (7) are replaced with one innocent ownership definition that applies to all federal civil forfeitures: Under CAFRA, an "innocent owner" claiming an interest in property which existed at the time of the illegal conduct giving rise to the forfeiture is now globally defined as one who "(I) did not know of the conduct giving rise to forfeiture; or (ii)upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A).

---

question, had leased the Aircraft and was not working for Caribair at the time he transported narcotics." Reply Brief at 3. It does not supply any written instrument evincing the alleged lease arrangement, however, and it might reasonably be viewed as somewhat odd that the company would take pains to lease the aircraft to its own employee on this particular occasion, when De La Cruz was ostensibly on a company related mission to obtain avionic repairs for the aircraft, as opposed to some personal errand or charter business.

Although the claimant's attorney at oral argument sought to explain the leasing matter as a general business practice of CaribAir designed to generate flight revenues, the record here shows that the pilots were on company business, not a personal charter flight, and on this background the fact of the lease might reasonably be viewed as an effort by the employer to distance itself or to "cast a blind eye" toward the illicit drug trafficking activities of its pilots.

As under prior forfeiture law, under CAFRA the burden of proof remains on the claimant to establish his status as "innocent owner" by a preponderance of the evidence. 18 U.S.C. § 983(d)(1).

CAFRA also clarifies the ways in which an owner with knowledge may prove he or she "did all that reasonably could be expected" to prevent illegal use of the property, specifying that an owner may establish this negligence prong of the defense by showing that he or she "(I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; *and* (II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property." § 983(d)(2)(B)(I).

With this alternative formulation of an "innocent owner" as one who *either* lacks knowledge of the illicit activities giving rise to the forfeiture, *or* who has knowledge of the activity but has evinced his lack of consent by affirmatively attempting to stop it. CAFRA effectively codifies the prevailing judicial interpretation of the predecessor forfeiture statute, under which the "knowledge" and "consent" terms were viewed to operate in the *disjunctive* with a negligence standard: That is, where an owner was aware of an illegal use of his property, he could could still invoke the "innocent owner" defense if he could show he took "all reasonable steps" to prevent the illegal activity. *See* Barclay Thomas Johnson. *Restoring Civility—The Civil Asset Forfeiture Reform Act of 2000: Baby Steps Towards a More Civilized Civil Forfeiture System,* 35 Ind. L.Rev. 1045 (2002); *United States v. Cleckler,* 270 F.3d 1331 (11th Cir.2001).

It is unclear whether "wilful blindness" of a property owner still operates as a facet of or equivalent to actual knowledge for purposes of defeating "innocent owner" status under CAFRA. Some courts have continued to apply this concept in defining what constitutes innocent owner "knowledge" under CAFRA. *See United States v.2001 Honda Accord,* 245 F.Supp.2d 602, 611 (M.D.Pa.2003); *U.S. v. One 1988 Beachcraft Power Boat,* Case No. 01–10054–Civl–Moore (S.D.Fla. Nov. 21, 2002).

While the absence of the willful blindness language in § 983(d)(2)(A) seems to suggest that a pure actual knowledge test might apply, it is unlikely that this was the intent of Congress in enacting this provision. Elimination of the "willful blindness" concept from the "innocent owner" test would create incentives for employers and other property owners to cast a blind eye toward the criminal activities of those to whom they entrust their property, and would run contrary to the prevailing notion that an "innocent owner" is charged with some duty of reasonable care in avoiding illicit uses of his property.

In pre-CAFRA law, this was the driving logic behind the conclusion of multiple courts which incorporated the concept of "willful blindness" into the definition of "knowledge" in interpreting the "innocent owner" of real property under § 881(a)(7), even though this section—unlike § 881(a)(4)(C)'s "innocent owner" definition governing conveyances—did not specifically include "willful blindness" as a factor for consideration in determining the presence of guilty "knowledge." *See United States v. 16328 South 43d East Ave., Bixby, Tulsa County, Oklahoma,* 275 F.3d 1281 (10th Cir.2002); *United States v. Milbrand,* 58 F.3d 841 (2d Cir.1995); *United States v. One 1973 Rolls Royce,* 43 F.3d 794 (3d Cir.1994); *United States v. One Parcel of Property Located at 755 Forest*

*Road,* 985 F.2d 70 (2d Cir.1993); *United States v. One Parcel of Real Property Located at 3100 N.E. 48th St., Fort Lauderdale,* 871 F.Supp. 437 (S.D.Fla.1994). This court presumes Congress was aware of the judiciary's efforts to bring consistency to the interpretation of the concept of "knowledge" in defining who stands as "innocent owner" in the civil forfeiture context, and intended to incorporate this view into CAFRA, which does not attempt to otherwise limit the concept of "knowledge" in its now universal definition of an "innocent owner."

■ Recognizing that "actual knowledge" may be proven by inference from circumstantial evidence suggesting a high probability of a property's involvement with drug trafficking, and that a property owner may not "turn a blind eye" toward such evidence and still claim "innocent owner" status under CAFRA, the court holds that the claimant in this case has failed to satisfy its burden of proving, by a preponderance of the evidence, that it entitled to summary judgment on its affirmative defense of "innocent ownership."

### Application

■ The claimant rests its assertion of innocent ownership on: (1) the affidavit of CaribAir president Rafael Rosado, to the effect he was unaware of De La Cruz' use of the aircraft for drug smuggling until after the arrest event; (2) the deposition testimony of the investigating Customs Agent, to the effect the Customs Department is not in possession of any evidence directly proving Rosado's actual knowledge of De La Cruz's drug activities and (3) the affidavit of CaribAir's own attorney, to the effect that CaribAir offered to fully cooperate with law enforcement authorities after De La Cruz was arrested for the drug offense in question.

The government, in turn, does not claim that Rosado actually observed any drug trafficking on the part of De La Cruz, either with or without use of its aircraft, but contends that CaribAir's actual knowledge or at least "willful blindness" to its pilots' illegal drug trafficking may reasonably be inferred from a historical course of illegal smuggling activity involving CaribAir aircraft:

- September 20, 1990—Rafael Rosado fined by Bahamian authorities for smuggling Chinese aliens into Rock Sound Airport on Eleuthera Island;
- November 19, 2000—CaribAir craft detained in Puerto Rico when 2 CaribAir pilots and a passenger attempted to smuggle counterfeit watches;
- March 21, 2001—CaribAir pilots De La Cruz and Ovalle are detained at Miami International Airport after a drug dog alert with $167,000 in currency seized;
- May 28, 2001—CaribAir pilots are arrested by local law enforcement for smuggling phones into Dominican Republic, and CaribAir pays fine;
- August 7, 2002–CaribAir pilots De La Cruz and Sanchez smuggle 455 kilos of cocaine from Dominican republic through Fort Lauderdale Executive airport.

In addition to the smuggling episodes involving CaribAir aircraft [3], the government suggests that CaribAir's actual knowledge or its "blind eye" toward illegal drug trafficking involving its aircraft might be inferred from a number of criminal convictions involving Rosado's relatives.[4]

---

**3.** The court does not find the CaribAir history of *nondrug* related smuggling activities of its pilots to be relevant to the issue of its actual knowledge or "blind eye" turned toward the illegal drug trafficking activity involving its aircraft which is at issue in this lawsuit.

**4.** For example, the government refers to prior bribery and alien smuggling convictions of

■ Viewing this evidence in the light most favorable to government, as non-moving party, for purposes of this summary judgment proceeding upon the claimant's cross motion for summary judgment, the court does not find CaribAir's general disavowals of lack of knowledge sufficient to establish its status as "innocent owner" as a matter of law. Although the government has not presented evidence proving lack of knowledge or consent, the burden of proof is on the claimant as owner to come forward with evidence establishing lack of knowledge. *United States v. 15 Bosworth Street*, 236 F.3d 50 (1st Cir. 2001). For purposes of prevailing on a summary judgment motion, this would require claimant to establish the lack of any disputed issues of fact bearing upon its lack of knowledge.

This is not accomplished through the affidavit of Rafael Rosado generally disclaiming knowledge of the pilots' drug trafficking activity. By this vein, claimant does not conclusively show that Rosado was unaware of facts suggesting a high probability that the aircraft had been used to traffic drugs, or that Rosado took affirmative steps, acting upon such information, to investigate whether the aircraft had in fact been used to facilitate drug trafficking. CaribAir thus fails to satisfy its burden of showing that there are no genuine issues of material fact bearing on whether it was "willfully blind" to the drug trafficking activity which gives rise to this forfeiture proceeding, and is not entitled to summary judgment on its affirmative "innocent owner" defense.

In finding disputed issues of fact bearing on the question of "willful blindness," the court takes some pause over the March 2001 episode involving the $167,000.00 currency seizure from De La Cruz at Miami International Airport following a drug dog alert. If CaribAir had knowledge of this episode—and it does not affirmatively disavow knowledge by competent proofs — this would be some circumstantial evidence suggesting a high probability of drug trafficking involving its aircraft, which, viewed in conjunction with CaribAir's alleged lease of the aircraft to its own pilot on a non-revenue company -related mission, creates issues of fact on whether CaribAir had actual knowledge of, or turned a "blind eye" toward illegal drug trafficking activity involving its airplanes.[5]

The claimant's sworn assertion of lack of knowledge does not operate to require a different result, as it cannot serve to conclusively establish this element on a record which contains circumstantial evidence which might reasonably be interpreted to demonstrate a high probability of prior drug trafficking involving the aircraft.

Andres Rosado, cousin to Rafael Rosado, in 1987 and 1999, as well as a 1989 cocaine distribution conviction of Alfonso Difo, cousin to Rafael Rosado's wife. The government does not make any effort to factually tie these events to either Rafael Rosado or CaribAir, and the court is unable to independently discern any connection between these prior criminal activities of Rosado's extended family members and the drug smuggling activity of Rosado's pilots which gives rise to the instant forfeiture proceeding.

5. In rendering this decision, the court reserves ruling on the relevance of the separate cash forfeiture proceeding currently pending in this division where CaribAir and Rafael Rosado also appear as interested claimants. *United States v. $633,995.00 in United States Currency*, Case No. 02–80781–Civ–Hurley. That case stems from the seizure of $633,995.00 from Orlando Rosado, brother to Rafael Rosado, who was detained in Palm Beach County after attempting to smuggle the cash into Miami from New York by Greyhound bus. At this juncture, it is premature to assess the relevance of CaribAir's involvement in that forfeiture proceeding, where issues respecting the forfeitability of the currency and the claimants' knowledge of activities giving rise to its forfeitability are still pending.

Bearing in mind that the burden of proving absence of actual knowledge is on the claimant seeking to establish the affirmative "innocent owner" defense, 18 U.S.C. § 983(d)(1); *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 907 (11th Cir.1985), the court concludes that there is insufficient evidence on record to support entry of the claimant's requested summary judgment. *See United States v. 16328 South 43d East. Ave., Bixby, Tulsa County, Oklahoma,* 275 F.3d 1281 (10th Cir.2002)(property owner's attempt to deter son from growing marijuana on her property by killing a pot plant growing in the toilet and threatening to evict him did not constitute "all reasonable steps" to prevent illegal activities where she did not thoroughly investigate property, actually evict son or alert police to suspicious grow activity); *United States v. Real Property and Premises known as 464 Myrtle Ave.,* 2003 WL 21056786 (E.D. N.Y. March 20, 2003)(claimant who was aware of facts from which a reasonable person would infer a high probability of illicit activity occurring on her premises failed to establish innocent owner defense where she did not ask police to investigate nor issue ultimatum to son to keep away from dubious associates); *United States v. Property Identified as 1813 15th St., N.W., Washington, DC,* 956 F.Supp. 1029 (D.D.C.1997)(forfeiture claimant failed to satisfy all reasonable steps standard for purposes of establishing innocent owner status based on lack of consent to illegal drug acts at her house, where convicted drug users were allowed to continue residing at house, all retained keys to allow in whomever they pleased, and front exterior of house was rarely checked in attempts to discover illegal acts).

It is therefore **ORDERED AND ADJUDGED:**

1. The government's motion for partial summary judgment on the forfeitability of the defendant property is **GRANTED.**

2. The claimants' cross motion for summary judgment on their "innocent owner" affirmative defense is **DENIED.**