[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 22, 2006
THOMAS  K. KAHN
CLERK

_____

No. 04-14308

_____

D. C. Docket No. 02-23102-CV-JLK

HELENA DE SARO,

Plaintiff-Appellant,

NEW ENGLAND CAPITAL
INVESTMENTS, LLC,

Plaintiff,

versus

UNITED STATES OF AMERICA,
DRUG ENFORCEMENT ADMINISTRATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 22, 2006)**

Before BARKETT and WILSON, Circuit Judges, and CONWAY[*], District Judge.

PER CURIAM:

Appellant Helena de Saro appeals from the district court's judgment that she had failed to establish her ownership of two valuable paintings that the United States seized. The paintings at issue are a 1793 Francisco Goya painting entitled *El Atraco a la Diligencia* and a 1924 painting entitled *Buste de Juene Femme* by Foujita that de Saro, a famous Spanish art dealer, claims to own. De Saro estimates that the Goya is valued at $8 million and the Foujita at $2 million. The paintings were suspected to have been involved in the drug trafficking activities of Jose Maria Clemente, who is not a party to this case. The government originally seized the paintings pursuant to civil forfeiture provisions found in section five of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 981(b) & 21 U.S.C. § 881(b). The United States seized the paintings on March 14, 2002, pursuant to a seizure warrant issued by a magistrate judge in the Southern District of Florida. At the time of the seizure, the paintings were stored at an art warehouse and under the name New England Capital Investments ("New England"), a corporation de Saro claimed to have formed to facilitate importing the paintings to the United States.

---

[*]Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

2

Following the execution of the civil seizure warrant, the government did not file a civil forfeiture complaint or provide notice to all interested parties, as is required under 18 U.S.C. § 983(a). Therefore, de Saro and New England commenced a separate civil action for the return of the paintings. In the complaint, de Saro and New England alleged violations of their Fourth and Fifth Amendment rights and sought return of the paintings pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, which provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."

Initially in their civil action, both de Saro and New England claimed ownership of the paintings. Before the trial began, however, New England relinquished its claim of ownership, explaining that it only acted as an intermediary for the potential sale of the paintings. De Saro and New England filed a joint motion to dismiss New England as a plaintiff in the case, which the district court denied. The district court found that the fact that New England did not designate a corporate representative for deposition entitled the court to infer that New England held at least some ownership interest in the paintings. Because New England refused discovery, the district court sanctioned New England by barring it from presenting evidence at trial regarding its lack of ownership interest in the paintings.

3

At trial, the district court determined that the sole issue was whether de Saro had shown by a preponderance of the evidence that she owned the paintings when they were seized. De Saro offered testimony and documents pertaining to her alleged ownership in the two paintings. On July 27, 2004, after a three-day bench trial, the district court entered its final judgment granting the government's motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1). After reviewing bills of sale and related documents indicating that de Saro sold the paintings to New England for $10 million, the district court determined that "the only reasonable conclusion is that in August of 2001, Ms. de Saro divested herself of whatever ownership interest she had in the paintings, and the fact that she kept the certificates of authenticity (after surrendering the paintings) does not prove her continued ownership." As to the fate of the paintings, the district court said:

> Ms. de Saro is not entitled to the return of the paintings in this civil case. [The government] shall maintain custody of the paintings pending such further forfeiture proceedings as are yet to be litigated in the criminal case pending before Judge Martinez. Ms. de Saro may assert whatever claim she believes she has to the paintings when (and if) the Government obtains a criminal conviction of Mr. Clemente and the criminal forfeiture is then ripe for ruling.

The criminal forfeiture the district court referred to was a parallel simultaneous criminal proceeding relating to the same paintings. Although only the civil case is currently before us, understanding the parallel action provides

4

helpful context.

Following the institution of the civil forfeiture proceedings, the government again restrained the paintings, this time pursuant to the criminal forfeiture provisions found in 18 U.S.C. § 982 and 21 U.S.C. § 853. The criminal forfeiture arose from the indictment of Clemente, who was charged with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956.[2] Clemente was indicted on June 27, 2002, approximately three months after the paintings were seized, and approximately one month after de Saro and New England initiated their lawsuit. The indictment contained a criminal forfeiture count, listing the Goya and Foujita paintings as personal property subject to forfeiture based on an unspecified relationship with the charged offense. De Saro and New England were not indicted in the criminal case against Clemente. Immediately thereafter, on July 1, 2002, the district court granted the government's motion for a protective restraining order that prohibited the transfer of the paintings, pending resolution of the criminal proceedings.

Clemente was taken into custody in Spain. Even though more than three years have passed since the government indicted Clemente, he has not been tried

---

[2]The criminal forfeiture statute, 18 U.S.C. 982(a)(1), mandates that defendants convicted under qualifying federal narcotics statutes, including § 1956, forfeit any property involved in those drug offenses.

because he is not subject to extradition. The government has conceded that it is unlikely that it will try Clemente in the United States anytime in the foreseeable future.

The criminal forfeiture statute, 21 U.S.C. § 853(k), prohibits any party that claims to have an interest in property subject to forfeiture from intervening in a trial or commencing an action against the United States concerning the validity of the party's alleged interest once the government has filed the indictment.[3] In other words, according to the statute, de Saro and New England could not do anything to recover the property in the criminal proceeding, unless and until Clemente was convicted and forfeiture proceedings commenced after his conviction. The district court, concerned that de Saro and New England would have to wait interminably for the resolution of the criminal case in order to assert their claim over the paintings, nevertheless allowed de Saro and New England to proceed.

De Saro intervened as an unindicted third party and filed a motion to modify the protective restraining order. After an evidentiary hearing, the district court

---

[3]The criminal forfeiture statute, 21 U.S.C. § 853(k), provides that:
no party claiming an interest in property subject to forfeiture under this section may--
  (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
  (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

denied de Saro's motion. De Saro appealed, and on November 9, 2004, a panel of this Court vacated the district court's judgment and remanded for rehearing on several issues. *United States v. Helena de Saro*, 11th Cir. 2004, (No. 03-15828, Nov. 9, 2004).

Turning back to this civil action, there are five main issues on appeal: (1) whether § 853(k) precludes the district court's jurisdiction; (2) whether de Saro had standing to bring the action; (3) whether the district court erred in not addressing whether the government met its notice obligations under CAFRA; (4) whether the district court erred in placing the burden of proof on de Saro to prove her ownership of the paintings and in finding that de Saro failed to meet this burden; and (5) whether the district court erred in sanctioning New England.

The district court's subject-matter jurisdiction is a legal question that we review de novo. *Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005). We review the district court's standing determinations de novo. *Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1271 n.9 (11th Cir. 2001). "We review the district court's grant of judgment as a matter of law de novo, applying the same Rule 50(a) standard that guided the trial court." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1114 (11th Cir. 2005). Finally, we review a district court's decision to impose sanctions for an

7

abuse of discretion. *SCADIF, S.A. v. First Union Nat'l*, 344 F.3d 1123, 1130 (11th Cir. 2003).

On appeal, de Saro first argues that we should vacate the district court's judgment for lack of subject-matter jurisdiction, in light of *Roberts v. United States*, 141 F.3d 1468, 1469 (11th Cir. 1998) (per curiam), in which we held that the criminal forfeiture statute, 21 U.S.C. § 853(k), expressly bars a parallel civil hearing, even if the indicted defendant is a fugitive who may never be brought to trial. De Saro argues that this decision confirms that the district court was statutorily barred from conducting a parallel civil hearing, and therefore we should now vacate the district court's judgment.[4]

*Roberts* does not bar this action, however, because unlike the plaintiff in *Roberts* who filed suit after the return of the indictment, de Saro filed suit during the narrow window of time after the initial seizure of the paintings but before the return of the indictment seeking criminal forfeiture. The plain language of § 853(k)(2) forecloses parallel civil suits "subsequent to" – not before (as in de Saro's case) – "the filing of an indictment or information alleging that the property is subject to forfeiture." Therefore, we have subject-matter jurisdiction.

The government also contends that de Saro lacked standing to bring the civil

---

[4]We are mindful of the inherent irony in de Saro claiming that we do not have subject-matter jurisdiction to entertain a suit that she initiated.

8

action. Courts have repeatedly cautioned against confusing the constitutional standing inquiry with the determination on the merits of the forfeiture action. The constitutional standing requirements are forgiving, and any colorable claim on the property generally suffices. *See United States v. One-sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003); *United States v. $81,000*, 189 F.3d 28, 35 (1st Cir. 1999) ("Courts do not generally deny standing to a claimant who is either the colorable owner of the res or who has any colorable possessory interest in it."); *United States v. Premises Known as 7725 United Ave. N., Brooklyn Park, Minn.*, 294 F.3d 954, 957 (8th Cir. 2002) ("The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property.").

De Saro clearly demonstrated a legally-protected interest sufficient to meet the requirements of standing. De Saro testified regarding her ownership of the paintings and explained that, although she anticipated selling the paintings through New England and executed certain documents to facilitate the sale, the sale never took place, and she never received payment. Having presented proof that she purchased the paintings, held them in her possession for over ten years and continued to retain possession of the original certificates of authenticity, de Saro

9

presented evidence of an interest in the case sufficient to warrant the exercise of the district court's jurisdiction.

Having determined that we have subject-matter jurisdiction and that de Saro has standing to bring this suit, we vacate the district court's judgment because the government failed to follow CAFRA's notice requirements under 18 U.S.C. § 983 and because the district court improperly placed the burden of proof on de Saro. Pursuant to § 983(a)(1)(A), the government was required to furnish notice to interested parties within 60 days of the date of seizure, which the government admittedly did not do. The person from whom the property was seized (in this case, New England) has a statutory right under § 983(a)(1)(F) to the immediate return of the property based on the government's failure to fulfill its notice obligations:

> If the Government does not send notice of a seizure of property . . . to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time.

18 U.S.C. § 983(a)(1)(F). We express no opinion as to whether the parallel criminal proceeding would prevent the immediate return of the paintings. Because of the government's failure to follow the notice provisions, there is no bar in this civil proceeding for the paintings to be immediately returned. According to the

10

statute, returning the paintings would not prejudice the government's right to initiate a civil forfeiture action, which it should have done in the first place and finally did in the Southern District of Florida on March 2, 2006.

The district court also improperly placed the burden of proof on de Saro. CAFRA's clear statutory language places the burden of proof on the government:

> **(c) Burden of proof.**–In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property–
> **(1)** the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
> **(2)** the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
> **(3)** if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c).

Once de Saro met the threshold standing requirement, the district court should have then placed the burden of proof on the government to prove by a preponderance of the evidence that the paintings were subject to forfeiture. *See* 18 U.S.C. § 983(c)(1). However, the district court never required the government to present evidence that Clemente had obtained or used the paintings in money-laundering activity.

Because we are vacating the district court's judgment below and because the government has recently filed its own civil forfeiture action, we note that the district court should likely consolidate these cases into one action. Therefore, de Saro's argument that the district court misapplied sanctions against New England that unfairly prejudiced her is possibly moot because, in effect, the action could be seen as starting over on the civil side with the government's civil forfeiture action. Nevertheless, we note that the district court correctly found that, because New England failed to designate a corporate representative for deposition, it was "barred from presenting witnesses or documentary evidence at trial regarding New England Capital's lack of ownership interest in the paintings." The district court further correctly found that a reasonable inference could be drawn from New England's failure to participate in discovery that "New England Capital held at least some ownership interest in the paintings." These findings do not constitute an abuse of discretion. New England's refusal to produce evidence regarding the nature of its relationship with de Saro entitled the district court to infer that the evidence would have been adverse to its case and would have indicated that New England held at least some ownership interest in the paintings. *Cf. United States v. Johnson*, 288 F.2d 40, 45 (5th Cir. 1961).

To conclude, we VACATE the district court's judgment as a matter of law

and REMAND the case to the district court.  We note that, while the criminal court must determine whether or not a bar exists to the immediate return of the paintings to New England on the criminal side, there is currently no bar on the civil side.  On the civil side, this case should likely proceed below as a consolidated action with the government's recently filed civil forfeiture action, with the court properly placing the initial burden of proof on the government.

**VACATED AND REMANDED.**