UNITED STATES of America,
Plaintiff,

v.

ONE 2005 DODGE MAGNUM,
VIN 2D4FV48T15H516424,
Defendant.

Civil Action No. 3:10–cv–135–TCB.

United States District Court,
N.D. Georgia,
Newnan Division.

Feb. 22, 2012.

George Jeffrey Viscomi, U.S. Attorney's Office, Atlanta, GA, for Plaintiff.

Graylin C. Ward, Ward Law Office, Newnan, GA, for Defendant.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This ease comes before the Court on Plaintiff's motion for summary judgment [11]. Claimant Joanne Dallas ("Dallas") opposes the motion,

## I. Background

As a preliminary matter, the Court notes that Dallas has not complied with the Court's local rules. Specifically, she has failed to properly respond to each of the Government's undisputed material facts as required by Local Rule 56.1(B)(2)(a)(1)-(3). As a result, those facts are deemed admitted. *See Brandon v. Lockheed Martin Aeronautical Sys.*, 393 F.Supp.2d 1341, 1347–48 (N.D.Ga.2005); *see also Jones v. Gerwens*, 874 F.2d 1534, 1537 n. 3 (11th Cir.1989).

Dallas's statement of disputed, material facts also fails to comply with the local rules. Local Rule 56.1(B)(2)(b) requires such a statement to meet the requirements set out in Local Rule 56.1(B)(1), which requires each fact to be supported by a citation to evidence. The Court is not to consider any fact that is not supported by a citation to evidence or is stated as an issue or legal conclusion. All of Dallas's facts run afoul of this rule, as none of them is supported by citation to evidence. Consequently, the court will not consider any of her alleged facts, and the undisputed facts in this action are as follows.

### A. The Forfeiture

On August 18, 2006, B. Storey, an investigator with the LaGrange Police Department ("LPD"), arrested Jeffery Dallas ("Jeffery") for selling cocaine. After this arrest, Storey continued to investigate Jeffery's activities as they related to the distribution of controlled substances.

On or about June 2008, Special Agent F. Moreman with the Drug Enforcement Administration ("DEA") became involved in an investigation into Jeffery's activities as they related to the distribution of controlled substances.

On September 8, 2009, at approximately 4:20 p.m., Storey and LPD investigator J. Hatchett met with a confidential source in LaGrange. The confidential source made recorded phone calls to Jeffery and negotiated the purchase of one-quarter ounce of cocaine for $250. Jeffery instructed the source to meet him at 1182 Lindsey Street in LaGrange. The Lindsey Street residence is occupied by Jeffery's girlfriend, who is the mother of four of his eight children.

At approximately 4:40 p.m., LPD investigators drove the source to the area, and the source exited the vehicle and walked to the Lindsey Street residence. Approximately ten minutes after the source arrived at the residence, Jeffery arrived driving a silver and black Dodge Magnum, the Defendant Magnum. The source then executed the controlled drug buy. At approximately 5:16 p.m., the source met with Storey and relinquished approximately one-quarter ounce of suspected cocaine, which was taken into evidence.

On September 10, 2009, at approximately 1:30 p.m., Storey and Hatchett met with a second confidential source in LaGrange. The second source made a phone call to Jeffery and negotiated the purchase of three grams of cocaine for $125. Jeffery instructed the source to meet him at the Lindsey Street residence. The source was outfitted with an audio and video recording device. At approximately 2:22 p.m., LPD investigators drove the source to the area of the Lindsey Street residence. The source exited the vehicle and walked to Jeffery's residence, where he executed the controlled drug buy. At approximately 3:00 p.m., the source met with Storey and relinquished approximately three grams of suspected cocaine, which was taken into evidence.

On September 15, 2009, at approximately 2:40 p.m., Storey, LPD sergeant R. Moore and Moreman met with a third confidential source in LaGrange. The

third source was outfitted with an audio and video recording device. The source made recorded phone calls to Jeffery and negotiated the purchase of one ounce of cocaine for $500. Jeffery instructed the source to meet at the Bay Food Store located at 1312 Hamilton Road in LaGrange. The source was given $500 in official government funds ("OGF") to make the controlled transaction. The source was driven to the Bay Food Store by an undercover DEA agent.

At approximately 3:40 p.m., the DEA agent and the source arrived at the Bay Food Store, and the source entered the store. Almost immediately after the source arrived at the store, Jeffery pulled into the parking lot driving the Defendant Magnum. The source exited the store and got in the passenger side of the Magnum, closing the door. The controlled drug buy occurred within the Magnum. The source exited the Magnum and entered the DEA agent's vehicle. The source relinquished a quantity of suspected cocaine to the DEA, which was taken into evidence.

On September 25, 2009, at approximately 2:54 p.m., Storey and Moore met with a fourth confidential source. The source made a recorded phone call to Jeffery and negotiated the purchase of two ounces of crack cocaine for $1,400. Jeffery instructed the source to meet him at the Lindsey Street residence. The source was outfitted with an audio and video recording device. The source was given $1,400 in OGF to consummate the controlled transaction. At approximately 3:21 p.m., the source met Jeffery at the Lindsey Street residence and executed a controlled drug buy inside the Magnum parked in the driveway of the residence. The source then met Moore and Storey and relinquished approximately two ounces of suspected cocaine, which was taken into evidence.

On April 23, 2010, at approximately 10:00 a.m., Moore, Storey and Moreman met with Jeffery at the state probation office in LaGrange. Jeffery drove to the meeting in the Magnum, but he decided not to park in the ample open parking spaces in front of the probation office. He also denied driving to the meeting. Ultimately, the keys to the Magnum were found in his pocket, and the Magnum was discovered parked in front of LaGrange City Hall, approximately thirty to forty yards away from the probation office. Jeffery was taken into custody for a probation violation.

After Jeffery was taken into custody, the Magnum was seized. An inventory of the Magnum revealed the following items: personal checks belonging to Jeffery; diabetes tablets issued to Jeffery on June 5, 2009; a LabCorp paternity test identifying Jeffery as the test subject; an invoice for work performed on the Magnum; ten receipts issued to Jeffery for life insurance payments; a receipt issued to Jeffery for a $1,600 paint job dated March 16, 2010; and printed driving directions with the start address as 1182 Lindsey Street. There were no items found belonging to the claimant, Joanne Dallas. The Magnum's odometer at the time of seizure read 87,495.0 miles.

Storey has known of Jeffery since approximately August 18, 2006. Storey saw him driving the Magnum approximately one to two times per week from approximately April 2008 to April 2010. Storey patrolled the area around the Lindsey Street residence approximately once every two weeks. When Storey would drive by the Lindsey Street residence, he would regularly see the Magnum parked there overnight from approximately April 2008 to April 2010.

Moreman has known of Jeffery since approximately June 2008. Moreman saw

him driving the Magnum approximately two to three times per month from approximately November 2008 to April 2010.

### B. The Claimant

Dallas claims that the Magnum is her vehicle. The Magnum was formerly owned by Dallas's father, and Dallas acquired title to the vehicle on June 22, 2009, after her father died. While the vehicle was owned by her father, it was driven by Jeffery.

Jeffery lived with Dallas and contributed to her monthly rent from at least June 2008 to April 2010, between his previous and current incarcerations, although he frequently stayed with his girlfriend at the Lindsey Street residence. In her deposition, Dallas testified that she knew that Jeffery had been involved in selling drugs for years and had been arrested and incarcerated as a result.

The Magnum's certificate of title, dated June 22, 2009, lists the color as silver and its mileage as 79,000. Dallas insured the vehicle with Cotton Mutual Insurance Company as a work vehicle being driven ten or more miles per day. However, she testified in her deposition that after taking possession of the vehicle, it mainly sat in her driveway because she did not want anyone to drive it. She alleges that Jeffery drove the Magnum only three times while she was in possession of it between June 2009 and April 2010. As previously indicated, when the Magnum was seized on April 23, 2010, its odometer read 87,495.0.

Dallas alleges that upon her receipt of the Magnum, it was entirely red in color and that she never had the Magnum painted. When Storey initially saw Jeffery driving the Magnum, its color was solid silver. In September 2009, the Magnum was silver on top and the bottom panels were black. In April 2010, the Magnum was silver on top and the bottom panels were red. Upon seizure, the Magnum was silver and red, and it was noted that the vehicle had what appeared to be relatively new paint.

Dallas testified in her deposition that the Magnum never had to be maintained or repaired during her possession. Upon investigation after seizure, Storey learned that the Magnum had a fuse replaced at Southside Detail and Car Wash located in LaGrange approximately two weeks prior to seizure. Dallas also stated during her deposition that the vehicle had a sunroof. Upon seizure, the vehicle did not have a sunroof.

In June 2009, at the time the Magnum was transferred to Dallas, she owned a Honda Accord and a Chevrolet Lumina. At that time, the members of her household (other than Jeffery) included herself, her fiance, her son, and her daughter. Dallas and her fiance drove the Honda Accord together and carpooled to work. Her fiance and son drove the Lumina. On February 20, 2010, Dallas purchased a Toyota Camry, and her daughter was the primary driver of that vehicle.

On November 9, 2010, Dallas filed a verified claim of interest, contending that she is the owner of the Magnum. On May 9, 2011, the Government filed its motion for summary judgment.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that

burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the [nonmoving party] upon the evidence presented." *Id.* If reasonable minds could differ as to the conclusion to be drawn from the evidence, the motion for summary judgment should be denied. *Id.* at 251, 106 S.Ct. 2505.

**B. Civil Forfeiture Legal Framework**

■ Whether the nonmoving party has successfully raised a genuine issue of material fact must be determined in the context of the peculiar procedural requirements of forfeiture law. *See United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1438 (11th Cir.1991). To invoke the Court's jurisdiction, a claimant must first show that she has an interest in the defendant property sufficient to support Article III and statutory standing. *See United States v. 1012 Germantown Rd.,* 963 F.2d 1496, 1500 (11th Cir.1992); *United States v. $38,000,* 816 F.2d 1538, 1543 n. 11 (11th Cir.1987).

■ Once a claimant has established standing, the Government must show by a preponderance of the evidence that the property at issue is subject to forfeiture. 18 U.S.C. § 983(c)(1). When the Government alleges that the property is forfeitable as facilitating property, it must show a substantial connection between the seized property and the criminal offense. *Id.* § 983(c)(3). In order to meet its burden, the Government may use evidence gathered after the filing of the complaint for forfeiture, *id.* § 983(c)(2), and rely on circumstantial evidence and hearsay, *United States v. Carrell,* 252 F.3d 1193, 1201 (11th Cir.2001).

**III. Analysis**

**A. Standing**

As stated above, Dallas must first show that she has an interest in the defendant property sufficient to support Article III and statutory standing. *See United States v. 5000 Palmetto Drive,* 928 F.2d 373, 375 (11th Cir.1991) ("The claimant bears the burden of establishing standing."). The Government contends that although Dallas holds title to the Magnum, she does not have Article III standing because she is merely a nominal owner who was not injured by the forfeiture.

■ "At the heart of Article III standing is the existence of an injury, not ownership." *Via Mat Int'l S. Am. Ltd. v. United States,* 446 F.3d 1258, 1262 (11th Cir.2006). Still, ownership of property "that has been seized can be evidence of an injury that is direct enough to confer standing" *Id.* "Courts have repeatedly cautioned against confusing the constitutional standing inquiry with the determination on the merits of the forfeiture action. The constitutional standing requirements are forgiving, and any colorable claim on the property generally suffices." *De Saro v. United States,* 173 Fed.Appx. 760, 764

(11th Cir.2006). The important phrase is "colorable claim on the property," as not just any purported injury or interest is sufficient. *Via Mat*, 446 F.3d at 1262 n. 5.

■ Nominees, or "straw owners," do not "necessarily suffer an injury that is sufficient to demonstrate standing." *Id.*, Actual ownership may be "evidenced in a number of ways including showings of actual possession, control, title and financial stake." *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 647 F.2d 864, 866 (8th Cir.1981). However, "possession of bare legal title by one who does not exercise dominion and control over the property is insufficient to establish standing to challenge a forfeiture." 5000 *Palmetto Drive*, 928 F.2d at 375.

Consequently, the Court must look behind the formal title of the Magnum to determine "whether the record title owner is a 'strawman' set up to conceal the financial affairs or illegal dealings of someone else." *Id.* This critical analysis is necessary when determining standing because "people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name." *U.S. v. 900 Rio Vista Blvd.*, 803 F.2d 625, 630 (11th Cir.1986).

■ The Government does not challenge that Dallas is the record title owner of the Magnum although Dallas spends the majority of her response and supporting affidavits proving this fact. Rather, the Government argues that Dallas is not the *true* owner of the Magnum because (1) Jeffery exercised dominion and control over the vehicle, (2) Jeffery exhibited protective behavior toward the vehicle,[1] and (3) Dallas could not provide basic details about the vehicle. Thus, the Government argues, Dallas is a nominal owner who lacks standing to bring a claim of interest. In response, Dallas argues that she exercised dominion and control over the vehicle, but she does not address the Government's other two points.

### 1. Jeffery's Dominion and Control Over the Magnum

The Government argues that Jeffery exercised dominion and control over the Magnum because (a) he was the predominant driver of the vehicle; (b) the vehicle was regularly parked outside the Lindsey Street residence overnight; and (c) all items found in the car belonged to him rather than Dallas. The Court agrees.

#### a. Jeffery Was the Predominant Driver of the Magnum

While Dallas's father held title to the Magnum, Jeffery was the predominant driver of the vehicle. After title passed to Dallas, nothing changed in that regard; Jeffery remained the predominant driver. Both Storey and Moreman report repeatedly seeing Jeffery driving the Magnum from June 2009 until the car was seized.

While Dallas testified that Jeffery did not operate or have her permission to operate the vehicle except for very limited occasions,[2] the declarations of Storey and Moreman, who witnessed him driving the Magnum on a regular basis, contradict her testimony. Storey saw Jeffery driving the vehicle one to two times per week from

---

1. The Government characterizes this as one of the factors showing Jeffery's dominion and control over the Magnum. As discussed below, while the Court considers Jeffery's protective behavior to be relevant to the issue of true ownership, it has little bearing on the sub-issue of dominion and control.

2. Dallas testifies in her deposition that she estimates Jeffery drove the vehicle only three times after she received the certificate of title to the Magnum.

April 2008 to April 2010, and Moreman saw him driving the vehicle two to three times per month from November 2008 to April 2010. Dallas has failed to raise a genuine issue of material fact as to the predominant driver of the Magnum, and this weighs heavily against a finding that she exercised dominion and control over it. *See United States v. One 1981 Datsun 280ZX,* 563 F.Supp. 470, 476 (E.D.Pa.1983) (title owner was not actual owner because his son drove car while he never did, he did not purchase car, and his son made decisions regarding car's accessories and features).

### b. The Magnum Was Regularly Parked Outside the Lindsey Street Residence Overnight

Storey also regularly saw the Magnum parked in the driveway of the Lindsey Street residence overnight. Although Jeffery's girlfriend lives at the Lindsey Street residence, and Jeffrey often stayed there, Dallas has no known connection to that residence. The Government argues that this further undermines Dallas's argument that she exercised dominion and control over the vehicle.

Dallas has not rebutted the Government's evidence that the Magnum was regularly parked at the Lindsey Street residence, nor has she addressed this issue in her response brief. The Court finds that this uncontested fact further supports the Government's contention that Dallas did not exercise dominion and control over the vehicle.

### c. All Items Recovered From the Magnum Belonged to Jeffery

The items recovered from the Magnum upon seizure included Jeffrey's personal checks and diabetes tablets, the LabCorp paternity test identifying him as the test subject, an invoice for work performed on the Magnum, ten receipts issued to Jeffery for life insurance payments, a receipt issued to Jeffery for a paint job,[3] and printed driving directions with the start address as 1182 Lindsey Street. There were no items found belonging to Dallas. The Government argues that this is additional evidence that Dallas did not exercise dominion and control over the Magnum.

Dallas has not rebutted this evidence, nor does she address it in her response brief. The Court finds that the undisputed contents of the vehicle at the time of seizure further support the Government's contention that Dallas did not exercise dominion and control over the Magnum.

In sum, the overwhelming evidence shows that Jeffrey exercised dominion and control over the Magnum because (1) he was the predominant driver of the vehicle, (2) the vehicle was regularly parked outside the Lindsey Street residence overnight, and (3) all items recovered from the vehicle upon seizure belonged to him.

### 2. Jeffery's Protective Behavior

On April 23, 2010, Jeffery drove the Magnum to his probation meeting, but rather than parking in one of the open parking spaces in front of the probation office, he parked in front of LaGrange City Hall, thirty to forty yards away. He also denied driving to the meeting when questioned. The Government argues that Jeffery was familiar with the surroundings of the probation office, as he had been sentenced to probation in 1998 and 2007. Thus, it argues that he was attempting to conceal his possession of the Magnum to protect it against seizure.

Dallas does not address this issue in her response brief or her supporting affidavit. Thus, the fact that Jeffery exhibited pro-

---

**3.** The fact that Jeffrey paid for the Magnum's paint job further supports the Government's

position that he exercised dominion and control over the vehicle.

tective behavior toward the Magnum is undisputed. However, this fact is less relevant to the sub-issue of dominion and control than it is to the ultimate issue of true ownership. The mere fact that Jeffery drove the Magnum to his probation meeting tends to show his dominion and control over the vehicle. His concealment of the Magnum, on the other hand, tends to show that his interest in the vehicle was sufficient to motivate him to protect it against seizure. Thus, Jeffery's actions further support the Government's ultimate assertion that he was the true owner of the vehicle.

### 3. Dallas's Unfamiliarity with the Magnum

The Government argues that Dallas is a nominal owner because she could not provide basic details about the Magnum during her deposition. The inability to provide factually accurate details about seized property that any true owner would know is evidence that the title holder is merely a nominal owner and is not injured by the seizure of the property. *See United States v. One 1988 Honda Accord,* 735 F.Supp. 726, 729 (E.D.Mich.1990). Dallas does not address the Government's contention that she was not able to correctly recall details regarding the Magnum.

When questioned regarding the Magnum, Dallas was not familiar with how much the vehicle was driven or its service history. She stated that she did not allow anyone to drive the vehicle for a long period of time, but she could not explain how the Magnum accumulated 8,495 miles in the ten months she possessed it. She also stated that the Magnum was not maintained or repaired while it was in her possession. However, records show that the vehicle had a fuse replaced at Southside Detail and Car Wash two weeks prior to its seizure.

Additionally, there are obvious features of the Magnum with which Dallas was unfamiliar. She stated that from June 2009 (when she acquired title to the vehicle) until its seizure in April 2010, the Magnum was entirely red or burgundy in color and was never painted. However, the vehicle's title lists its color as silver, and the Government presented evidence that it was painted twice after Dallas acquired title, first to silver and black, and then to silver and red. Moreover, Dallas stated that the Magnum had a sunroof, but the vehicle does not have a sunroof.

As discussed above, the Government has submitted ample evidence that Jeffery exercised dominion and control over the Magnum. Dallas's inability to provide accurate information regarding the Magnum's service history, mileage, color and basic features simply indicates that the converse is also true, i.e., that Dallas did not exercise dominion and control over the Magnum.

In sum, the overwhelming evidence shows that Jeffery is the true owner of the Magnum because (1) he exercised dominion and control over the vehicle, (2) Dallas did not exercise dominion and control over the vehicle, and (3) Jeffery acted to protect his interest in the vehicle. Dallas has failed to rebut any of this evidence. Therefore, the Court finds that she is merely a nominal owner who has not suffered an injury that would give her standing to contest the forfeiture.

### B. Forfeiture and Dallas's Defenses

Even if Dallas has standing, the Government has shown by a preponderance of the evidence that the Magnum was subject to forfeiture, and Dallas has not carried her burden of showing a defense thereto.

### 1. Forfeiture

 The Government argues that the Magnum falls under 21 U.S.C. § 881(a)(4),

which provides that all vehicles "used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]" shall be subject to forfeiture. As stated above, the Government must show by a preponderance of the evidence that the Magnum is subject to forfeiture. 18 U.S.C. § 983(c)(1). Moreover, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." Id. § 983(c)(3). In reviewing the evidence, the Court is to take a "common sense view to the realities of normal life applied to the totality of the circumstances." United States v. $242,484, 389 F.3d 1149, 1160 (11th Cir. 2004).

The Government contends the Magnum is subject to forfeiture because of its connections to illegal narcotics. Considering the totality of the circumstances, the Government has shown by a preponderance of the evidence that the Magnum was substantially connected to illegal drug transactions and thus is subject to forfeiture.

In United States v. One 1979 Porsche Coupe, 709 F.2d 1424, 1427 (11th Cir.1983), a drug dealer drove a vehicle to a hotel where drug negotiations subsequently occurred. The Eleventh Circuit found a substantial connection between the vehicle and the drug offense because the vehicle was used to transport the dealer to the location where the attempted drug purchase took place. Cf. United States v. One (1) 1971 Chevrolet Corvette, 496 F.2d 210, 212 (5th Cir.1974) (finding no substantial

connection with a vehicle where it was used only incidentally by parties selling drugs and had no connection to the ultimate drug transaction). In this case, like the drug dealer in One 1979 Porsche Coupe, Jeffery was selling drugs and drove the Magnum to the location of two drug deals. Thus, a substantial connection exists between the Magnum and a drug offense.

This conclusion is further supported by the fact that two of the drug transactions took place inside the Magnum. See United States v. Cleckler, 270 F.3d 1331, 1334 (11th Cir.2001) (finding a substantial connection with real property because two drug transactions had been negotiated and one drug transaction had occurred inside the residence situated thereon).

Therefore, the Court finds that the Government has carried its burden of proving that the Magnum was subject to forfeiture, and the burden shifts to Dallas to prove by a preponderance of the evidence that she has a defense to forfeiture. 1012 Germantown Rd., 963 F.2d at 1501.

### 2. Dallas's Defenses

█ Dallas's only asserted defense to forfeiture is that she is an innocent owner under 18 U.S.C. § 983(d). She testifies in her supporting affidavit that she was not aware of her brother Jeffery's conduct and that she did not give him permission to sell drugs in the Magnum. But Dallas does not otherwise attempt to rebut the Government's evidence that the Magnum is connected to illegal drug activity. Instead, she focuses on her own lack of connection to the illegal drug transactions in this case.

Under § 983(d)(1), Dallas must establish by a preponderance of the evidence that she is an innocent owner.[4] Because she

---

4. A "nominee who exercises no dominion or control over the property" is not an "owner" within the meaning of § 983(d). 18 U.S.C. § 983(d)(6)(B)(iii). Thus, the Court's conclusion above regarding Dallas's lack of dominion and control over the Magnum also

claims that she had a property interest in the Magnum at the time the illegal conduct giving rise to the forfeiture took place, subsection (d)(2) applies, and an "innocent owner" is defined as an owner who "did not know of the conduct giving rise to forfeiture; or upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A).

 Actual knowledge of the conduct giving rise to forfeiture may be proven "by inference from circumstantial evidence suggesting a high probability of the property's involvement with drug trafficking." *United States v. One 1988 Checolet 410 Turbo Prop Aircraft*, 282 F.Supp.2d 1379, 1383 (S.D.Fla.2003). A property owner may not "turn a blind eye toward such evidence and still claim innocent owner status...." *Id.* (internal quotations omitted). Knowledge of criminal activity may be inferred when a property holder knows that a party has income despite not having a legitimate source thereof. *See United States v. 1948 Martin Luther King Drive*, 91 F.Supp.2d 1228, 1246 (C.D.Ill. 2000).

Dallas argues, relying solely on her supporting affidavit, that she did not know of Jeffery's drug-related activity. However, this argument is undercut by her admission in her deposition that she knew that Jeffery had been involved in drug-related activity for years and had been arrested and incarcerated for that activity. Moreover, even if Dallas had not admitted such knowledge, the evidence shows that she was at least willfully blind to Jeffery's drug-related activity because she knew that he was supporting eight children and still managed to contribute to her monthly

rent, even though he had no substantial source of legitimate income. *See id.; see also United States v. One 1992 Lexus SC400*, 167 F.Supp.2d 977, 986–88 (N.D.Ill. 2001) (finding willful blindness where the property owner received expensive gifts and cash from a party who had been convicted of narcotics violations and lived a lavish lifestyle, but whose only known source of income was unlikely to afford such revenue).

Moreover, the overwhelming evidence shows that Jeffery was the primary driver of the Magnum. As discussed above, the Magnum was regularly seen parked at the Lindsey Street residence and being driven by Jeffery. Considering Jeffery's regular use of the vehicle and Dallas's knowledge of his drug-related activity, Dallas has not met her burden of proving that she did not know he was using the Magnum to sell drugs.

 Dallas also argues that she is an innocent owner because she did not participate in any drug-related activity with Jeffery or anyone else. But in a civil forfeiture case, the claimant's culpability in the underlying criminal conduct is irrelevant; it is her knowledge of that activity that subjects the property to forfeiture. *United States v. $6,207*, 757 F.Supp.2d 1155, 1163 (M.D.Ala.2010). Thus the fact that Dallas did not participate in any illegal activity does not mean that she is an innocent owner.

Accordingly, Dallas has failed to carry her burden of showing that she is an innocent owner, and the Court will grant the Government's motion for summary judgment.

precludes her innocent-owner defense. However, for purposes of this analysis, the Court will assume that Dallas is an "owner."

## IV. Conclusion

Plaintiffs motion for summary judgment [11] is GRANTED.